## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

IQASR, LLC.,

       Plaintiff,

   v.

WENDT, CORP., a New York corporation, and AMERICAN IRON & METAL CO., a Colorado corporation.

       Defendants.

---

## VERIFIED COMPLAINT AND JURY DEMAND

---

Plaintiff IQASR, LLC, files this Verified Complaint for patent infringement against Defendants Wendt, Corp., and American Iron & Metal Co., (collectively the "Defendants") and alleges as follows:

### PARTIES

1.    Plaintiff IQASR, LLC, ("Plaintiff" or "IQASR"), is a Colorado limited liability corporation, having a principal place of business at 1917 15th Ave Greeley, Colorado 80631-5356.

2.    Defendant Wendt, Corp., ("Wendt") is a New York corporation, having a principal place of business at 2555 Walden Ave, Buffalo, NY 14225-4737.

3.    Defendant American Iron & Metal Co., ("American Iron") is a Colorado corporation, having a principal place of business at 1801 South La Crosse Avenue/Highway 227 Pueblo County, Colorado  81006. Upon information and belief, American Iron has at least four

automobile recycling facilities in the state of Colorado. By virtue of its incorporation under Colorado law, American Iron is a resident of the State of Colorado.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement of United States Patent No. 9,132,432, entitled Isotropic Quantization Sorting Systems of Automobile Shredder Residue to Enhance Recovery of Recyclable Materials.

5.      This action arises under the patent laws of the United States of America. *See* 35 U.S.C. 271. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, and 1338(a).

6.      Personal jurisdiction over the Defendants in Colorado is proper under C.R.S. § 13-1-124 and the United States Constitution because Defendants are transacting business in this jurisdiction. Defendant American Iron has further submitted to the jurisdiction of the Courts of the State of Colorado by virtue of its incorporation under the laws of this State.

7.      In addition, this Court has personal jurisdiction over Defendants because both have knowingly and actively engaged in acts in the forum state that have infringed, will infringe, and/or aid and abet in the direct and/or indirect infringement of at least claims 1-9, 11, 13, 15 and 18 of United States Patent No. 9,132,432. Additionally, this Court has personal jurisdiction over Defendants because both have knowingly and actively engaged in acts in the forum state that contributed to the infringement by others in this District, and/or induced the infringement by others in this District of at least claims 1-9, 11, 13, 15 and 18 of United States Patent No. 9,132,432.

8.      Specifically, this Court has personal jurisdiction over Defendants based upon Defendants' sale and/or use of goods and transaction of business in the State of Colorado and sufficient minimum contact with the State of Colorado, and with the District of Colorado, in

particular. Upon information and belief, Defendants have transacted business within this district, have committed tortious acts within this district, have committed tortious injury to IQASR in this district, regularly do and/or solicit business in this district, derive revenue from goods used or consumed in this district, engage in other persistent courses of conduct in this district, and are subject to the jurisdiction of this Court.

9.     Venue in this Court is proper under 28 U.S.C. §§ 1391(b)–(c) & 1400(b) because Defendants are subject to personal jurisdiction in this District, and therefore are residents of that judicial district; and/or a substantial part of the events giving rise to the claim occurred in this District.

## PATENT-IN-SUIT

10.     The patent-in-suit is United States Patent No. 9,132,432 ("the '432 Patent"). (Exhibit A). The '432 Patent is directed to the separation of automobile shredder residue ("ASR").

11.     IQASR is the current owner by assignment of all rights, title, and interest in and to the '432 Patent.

12.     The '432 Patent claims priority to US Patent Application No. 13/274,328 filed on October 15, 2011.

## BACKGROUND

13.     The inventor of the '432 Patent, Dean Andersen ("Andersen") and his family have been involved in the automobile scrap and salvage industry since 1959.

14.     Andersen invented the technology that is embodied in the '432 Patent. Specifically, Andersen invented, among other things, improved methods of non-magnetically sorting magnetic fuzz from ASR in a manner that the magnetic fuzz is then substantially free of recyclable materials.

15.     IQASR's efforts to advance ASR separation technology have created significant commercial value, marketplace advantage and numerous environmental benefits. As a family owned business, the value and marketplace advantage that IQASR derives from its superior ASR separation technology allows it to compete against larger and better financed companies.

16.     IQASR is a direct competitor with Wendt and American Iron in both the automobile recycling equipment, and ASR separation industries respectively.

17.     On or about the week of January 7, 2013, a Wendt representative, Amit Dewan, traveled to Greeley, Colorado, to install a sensor separator device that Andersen had purchased from Defendant Wendt. This sensor separator was to be installed at a facility utilizing IQASR's ASR separation technology.

18.     During that visit, Mr. Dewan expressed an interest in seeing IQASR's ASR separation technology. Mr. Dewan was given a tour by Andersen, and even took numerous photographs of IQASR's ASR separation technology that was operating on-site.

19.     At the time of this visit, IQASR's ASR separation technology was protected by United States Patent No. 8,226,019 (the "'019 Patent") as well as the pendency of the '432 Patent. Both the '019 Patent and the '432 Patent claim priority to US Patent Application No. 13/274,328.

20.     During this tour, Mr. Dewan was specifically informed by IQASR of the '019 Patent on its ASR separation technology.

21.     During this tour, Mr. Dewan was specifically informed by IQASR of the then-pending status of the '432 Patent as to its ASR separation technology.

22.     Mr. Dewan specifically took photographs of the patent and patent pending markings on IQASR's ASR separation technology which specifically stated at the time:

**U.S. PAT. No. 8226019**
**Other Patents Pending**

(*See* Exhibit G)

4

23.     From its inspector Mr. Dewan, Wendt was provided information related to the technical capabilities of IQASR's ASR separation technology. Upon information and belief the photographs taken by Mr. Dewan were provided to Wendt representatives, including senior management.

24.     Upon information and belief, Mr. Dewan also disclosed to other Wendt representatives, including senior management, information indicating that IQASR's ASR separation technology was protected by the '019 patent as well as the pending status of the '432 Patent.

25.     Upon information and belief, after receiving this information from Mr. Dewan, Wendt set out to duplicate IQASR's ASR separation technology. Specifically, Wendt appears to have intentionally and willfully set out to seize, for its own financial benefit, Andersen's invention embodied in the '432 Patent to usurp IQASR's marketplace advantage.

26.     Upon further information and belief, Wendt sought even more information in its efforts to reproduce IQASR's ASR separation technology and so it again sought to gain access to IQASR's technology in Greeley, Colorado, in furtherance of its scheme.

27.     On or about Spring 2013, Defendant Wendt contacted IQASR's manager Andersen expressing an interest in IQASR's ASR separation technology. Wendt's interest indicated a desire to purchase, license or enter into a partnership with respect to IQASR's ASR technology.

28.     Upon information and belief, Wendt's representations and/or indications to IQASR and Andersen were misleading, false and fraudulent, as it had no intention of purchasing, licensing or entering into any type or partnership with IQASR with respect to its ASR separation technology, but merely wanted access to IQASR's proprietary technology in a coordinated effort to steal it.

29.     Under the false pretext of being a potential *bona fide* purchaser, licensee and/or partner, on or about late Spring 2013, Wendt representatives, Tim Conway and Dave Kamanski

(collectively "Wendt representatives"), traveled to Greeley, Colorado, to again view IQASR's ASR separation technology.

30.     Upon information and belief, this pretextual visit was in furtherance of Defendant Wendt's plan to fraudulently gain access to IQASR's ASR separation technology under false pretenses.

31.     During this pretextual visit, Wendt's representatives were specifically informed by IQASR of the '019 Patent on its ASR separation technology.

32.     During this pretextual visit, Wendt's representatives were specifically informed by IQASR of the then-pending status of the '432 Patent as to its ASR separation technology.

33.     During this pretextual visit, Wendt's representatives were specifically directed to the patent and patent pending markings on IQASR's ASR separation technology. This marking specifically stated at that time:

**U.S. PAT. No. 8226019**
**Other Patents Pending**

(*See* Exhibit G)

34.     Defendant Wendt never contacted IQASR or Andersen relative to its ASR separation technology after this visit.

35.     Upon information and belief, the information related to the technical capabilities of IQASR's ASR separation technology were provided to Wendt engineers, as well as senior management, in furtherance of its plan to steal IQASR's ASR separation technology for its own commercial benefit.

36.     On or about July 2013, in an issue of Recycling Today, Wendt representatives publically stated that:

> "…Wendt is introducing systems that are equipped with air classification to remove the light materials fraction. The air classifiers are operating at the

6

> Wendt Test Center and will be incorporated into several systems the company is building this summer…" (Exhibit B at 58 and 62)

37.    Upon information and belief, such "air classification systems to remove light materials" was a duplication of IQASR's inventive features embodied in the '432 Patent that was inspected by Mr. Dewan and Wendt's representatives.

38.    On or about October 2013, in an issue of Recycling Today, Defendant published an advertisement stating that at its Wendt Test Center it was:

> "…running our material through an air classifier to take a large quantity of the fuzz out…" (Exhibit C)

39.    Upon information and belief, Wendt's actions of "running our material through an air classifier to take a large quantity of the fuzz out" was a duplication of IQASR's inventive features embodied in the '432 Patent that was previously inspected by Mr. Dewan and Wendt's representatives.

40.    Defendant Wendt presently makes, uses, causes others to use, sells and offers for sale systems and methods of separating ASR, such as those marketed as Defendant's ASR Windsifter, or any similar products (collectively referred to as "Windsifter"). Wendt specifically advertises it's Windsifter as being "efficient [at the] removal of fuzz and dust." (Exhibit D)

41.    Upon information and belief, Wendt's marketing its Windsifter's "efficient removal of fuzz and dust" was a duplication of IQASR's inventive features embodied in the '432 Patent that was previously inspected by Mr. Dewan and Wendt representatives.

42.    On or about February 23, 2016, Grant Frasier, a business colleague of Andersen in the ASR separation industry, met with a Wendt salesperson, William Close. Mr. Frasier sent a follow up e-mail from the visit and Mr. Close responded to Mr. Frasier's questions (in red)

admitting essentially that Wendt's Windsifter removes magnetic fuzz and functions in an infringing manner. (*See* Exhibit E under questions # 4).

43.     Mr. Frasier confirmed to IQASR that the ASR removal of magnetic fuzz by Wendt's Windsifter is done non-magnetically and that its separated magnetic fuzz is substantially free of recyclable materials.

44.     The Windsifter that Defendants make, use, sell and/or offer for sale embodies or practices at least claims 1-9, 11, 13, 15 and 18 of the '432 Patent.

45.     Upon information and belief, Wendt manufactured and sold an ASR Windsifter that embodies or practices at least claims 1-9, 11, 13, 15 and 18, of '432 Patent to Defendant American Iron for use at its Pueblo location. Upon further information and belief, Wendt transported and installed this Windsifter at American Iron's Pueblo location where it is currently operational.

46.     American Iron's use of the Windsifter product is an unpermitted infringement of IQASR's '432 Patent.

47.     Upon information and belief, Wendt continues to provide spare parts, as well as maintenance and other support services, for the ASR Windsifter at American Iron's Pueblo location.

48.     Wendt's manufacturing the Windsifter product, as well as any use, sales, offers to sell, or importation of the same, are an unpermitted infringement of IQASR's '432 Patent. It is also an unpermitted act of indirect infringement to make, import, use, sell or offer to sell components that are uniquely adapted for use with its Windsifter, or that Defendant knows will be used in its Windsifter product.

49.     Upon information and belief, Defendant Wendt has provided to American Iron components for use in, and/or repair of its Windsifter that practices the process covered by the '432 Patent. Upon further information and belief, such components constitute a material part of the Windsifter.

50.     Upon further information and belief, such components are especially made or especially adapted for use in Wendt's infringing Windsifter and are not staple articles or commodities of commerce suitable for any substantial noninfringing use.

51.     Upon information and belief, Wendt intends to continue making, using, selling, offering for sale, or importing its Windsifter product that practices at least one claim of the '432 Patent.

52.     Upon information and belief, American Iron intends to continue using the Windsifter product that practices at least one claim of the '432 Patent.

## COUNT I
### INFRINGEMENT OF THE '432 PATENT

53.     Plaintiff realleges and incorporates each of the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

54.     IQASR is the owner of all right, title, and interest in the '432 Patent, duly and properly issued by the United States Patent and Trademark Office.

55.     The '432 Patent is valid and enforceable, having been validly issued by the United States Patent and Trademark Office after significant examination and analysis by the designated patent examiner.

56.     Upon information and belief Defendants have infringed the '432 Patent by, among other things, making, using, offering to sell, or selling in the United States, or importing into or exporting from the United States, products or services that are covered by at least one or more claims of the '432 Patent.

57.     Defendants Wendt and American Iron have directly infringed the '432 Patent, either literally or under the doctrine of equivalents.

58.     Defendant Wendt has infringed the '432 Patent, by contributing to the direct infringement of American Iron and others.

59.     Defendant Wendt has infringed the '432 Patent, by knowingly and with specific intent inducing direct infringement of the '432 Patent by American Iron and others.

60.     Upon information and belief Defendants' infringement of the '432 Patent was deliberate and willful.

61.     Upon information and belief Defendants lack a good faith belief that their activities do not infringe the '432 Patent.

62.     At least as early as January 13, 2013, Defendant Wendt was aware of IQASR's prior '019 Patent.

63.     Upon information and belief, Defendant Wendt knew, or should have known that the prior '019 Patent and the '432 Patent both claimed priority to US Patent Application No. 13/274,328 filed on October 15, 2011, such information being publically available.

64.     Upon information and belief Wendt had easy access to, and/or direct knowledge of the entire prosecution history of the '432 Patent which was publically disclosed by the United States Patent Office on April 18, 2013. (*See* Exhibit F which is a true and correct copy of the Notice of Publication issued by the USPTO.)

65.     Defendants' infringement was deliberately done with knowledge of the '432 Patent, and/or with willful blindness as to the existence of the '432 Patent.

66.     Defendants have profited through infringement of the IQASR's '432 Patent.

67.     Defendants' infringement of the '432 Patent has damaged and will continue to damage Plaintiff IQASR.

68.     Defendant Wendt intends to continue their unlawful infringing activity, and IQASR continues to and will continue to suffer irreparable harm— for which there is no adequate remedy at law—from such unlawful infringing activity unless Defendant Wendt is enjoined by this Court.

69.     Defendant American Iron intends to continue their unlawful infringing activity, and IQASR continues to and will continue to suffer irreparable harm— for which there is no adequate remedy at law—from such unlawful infringing activity unless Defendant American Iron is enjoined by this Court.

70.     Plaintiff IQASR has expended significant labor, skill and money to develop the technological advancements in ASR separation, some of which are embodied in the '432 Patent among others.

71.     IQASR has realized significant commercial value and marketplace advantage from its advancements in ASR separation technology.

72.     Defendant Wendt fraudulently, unlawfully and unfairly gained access to IQASR's ASR separation technology under false pretenses in an effort to wrongfully capitalize on its commercial value and gain an unfair marketplace advantage against IQASR.

73.     Defendants' wrongful actions have misappropriated business, sales and licensing opportunities that were created by Plaintiff through expenditure of its time, labor and skill in developing its ASR separation technologies.

74.     Defendants' wrongful actions have misappropriated Plaintiff's business and marketplace advantage and time, labor and money expenditures in obtaining patent protection for its ASR separation technologies.

75.     Defendant Wendt intends to continue to wrongfully capitalize on IQASR's commercial value and gain an unfair marketplace advantage while IQASR continues to and will

continue to suffer irreparable harm— for which there is no adequate remedy at law—from such unlawful infringing activity unless Defendant Wendt is enjoined by this Court.

76.     Defendant American Iron intends to continue to wrongfully capitalize on IQASR's commercial value and gain an unfair marketplace advantage while IQASR continues to and will continue to suffer irreparable harm— for which there is no adequate remedy at law—from such unlawful infringing activity unless Defendant American Iron is enjoined by this Court.

77.     Defendant Wendt's actions of fraudulently gaining access to IQASR's ASR separation technology under false pretenses in order to steal it were done willfully, in bad faith, and are contrary to honest industrial or commercial practice, and violate society's concepts of fair play.

78.     Defendant Wendt intends to continue to wrongfully benefit from its dishonest industrial or commercial practices while IQASR continues to and will continue to suffer irreparable harm— for which there is no adequate remedy at law—from such unlawful infringing activity unless Defendant Wendt is enjoined by this Court.

79.     Defendant American Iron intends to continue to wrongfully benefit from its dishonest industrial or commercial practices while IQASR continues to and will continue to suffer irreparable harm— for which there is no adequate remedy at law—from such unlawful infringing activity unless Defendant American Iron is enjoined by this Court.

## JURY DEMAND

80.     Plaintiff IQASR hereby demands a jury trial on all triable issues.

## PRAYER FOR RELIEF

**WHEREFORE**, IQASR prays for judgment and seeks relief as follows:

1) The Court declare that Defendants have infringed the exclusive rights granted to IQASR that are disclosed by the claims of the '432 Patent;

2) The Court declare that the '432 Patent is valid and enforceable;

3) The Court enjoin Defendants preliminarily and permanently against further infringement of the '432 Patent by Defendants, their officers, agents, servants, employees, affiliates, subsidiaries, licensees, successors and assigns, and those persons acting in concert with them, including related individuals and entities, customers, representatives, dealers, and distributors;

4) That Defendant Wendt pay IQASR restitution, in an amount according to proof and/or that Defendant American Iron pay IQASR restitution, in an amount according to proof;

5) That Defendant Wendt and/or American Iron pay the Plaintiff IQASR's actual damages and losses;

6) That the Defendant Wendt and/or American Iron account to IQASR for any and all gains, gross receipts, profits, and advantages attributed to or derived by it as a result of the activities complained of in this Complaint, according to proof;

7) The Court award to IQASR damages in an amount adequate to compensate it for Defendants' infringement of the '432 Patent, but in no event less than a reasonable royalty pursuant to 35 U.S.C § 284;

8) The Court award to IQASR its costs, and pre- and post-judgment interest on its damages, pursuant to 35 U.S.C. § 284;

9)      The Court declare this case to be exceptional and award IQASR its reasonable attorney fees and costs under 35 U.S.C. § 285, as interpreted by the US Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) and others;

10)     The Court declare that Defendants' acts of infringement, inducement of infringement, and/or contributory infringement of the '432 Patent have been willful;

11)     The Court increase all damages awarded to IQASR in this case to three times the damages amount found by the jury or assessed by this Court IQASR pursuant to 35 U.S.C. § 284; and

12)     The Court award to IQASR such other and further relief as the Court may deem just and proper.

Dated: July 13, 2016.

SANTANGELO LAW OFFICES P.C.

s/David S. Kerr
David S. Kerr

s/Luke Santangelo
Luke Santangelo
125 South Howes, 3rd Floor
Fort Collins, CO 80521
Phone: (970) 224-3100
Email: dkerr@idea-asset.com
Email: lukes@idea-asset.com

Attorneys for Plaintiff *IQASR, LLC*

## VERIFICATION

I, Dean Andersen, as owner and Manager of the Plaintiff, IQASR, LLC, hereby verify and state that I have reviewed the above allegations in this complaint and that to my knowledge all such allegations are true and correct.

IQASR, LLC

By:  _____

Dean Andersen, Owner and Manager