IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 16-cv-01782-MSK-KMT

IQASR LLC,

 Plaintiff,

v.

WENDT CORPORATION,

 Defendant.

_____

**OPINION AND ORDER DENYING MOTION FOR ATTORNEY FEES**
_____

**THIS MATTER** comes before the Court pursuant to Wendt Corporation's ("Wendt") Motion for [ ] Attorney Fees **(# 180, 184, 186)**, the Plaintiff's ("IQASR") response **(# 191, 201)**, and Wendt's reply **(# 204, 207)**. Also pending are several motions **(# 185, 202, 208)** to restrict public access to certain portions of the briefing and exhibits to the parties' submissions on the attorney fee issue.

The Court assumes the reader's familiarity with the proceedings to date and offers only a brief summary.

IQASR brought claims asserting that Wendt had infringed U.S. Patent No. 9,132,432 ("the '432 Patent" or simply "the patent"), which describes "Isotropic Quantization Sorting Systems of Automobile Shredder Residue to Enhance Recovery of Recyclable Materials." The invention describes using various methods – primarily air streams and wind tunnels -- to sort "automobile shredder residue" which results from the shredding of junked automobiles. This Court construed **(# 154)** the contested claims in the patent and, based on those constructions, the

1

parties agreed that judgment of invalidity should enter against IQASR **(# 162)**. The Court entered judgment, IQASR appealed the Court's claim construction order, and the Federal Circuit affirmed **(# 168)**.

Wendt now seeks an award of its attorney fees and costs because this is an "exceptional case" pursuant to 35 U.S.C. § 285. Wendt argues that IQASR's claims were "frivolous," formed without an appropriate pre-suit investigation, that its construction of the disputed terms in the patent were "exceptionally weak," and that it engaged in "many examples of litigation misconduct."

35 U.S.C. § 285 provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." An "exceptional" case is one "that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc,*, 572 U.S. 545, 553 (2014). A court considers the totality of the circumstances, including factors such as frivolousness, motivation, objective unreasonableness (in both factual and legal senses), and the need to advance principles of compensation and deterrence, among any others pertinent to the exercise of equitable discretion. *Id.* at n 6. The statute does not impose any specific evidentiary burden on the movant, but instead calls for "a simple discretionary inquiry" by the trial court. *Id.* at 557.

Wendt's motion alleges numerous acts by IQASR, some of which occurred on the record during this litigation (*e.g.* discovery disputes, positions regarding disputed claim terms) and some of which that did not (*e.g.* an inadequate pre-suit investigation, retention of an insurance policy that encourages aggressive litigation). Because the Court is most familiar with the proceedings that occurred on the record during this litigation, it focuses its attention primarily on

those matters. *See Thermolife Int'l, LLC. v. GNC Corp.*, 922 F.3d 1347, 1357 (Fed. Cir. 2019) (court may "refuse to add to the burdens of litigation by opening up issues that have not been litigated but are asserted as bases for a fee award"). The Court does not entirely disregard the events that allegedly occurred outside of its purview, but to dramatically expand the scope of factfinding into entirely new areas in which the facts are disputed and which might otherwise warrant further evidentiary presentation runs the risk of needlessly turning a dispute over fees into "a second major litigation of significant dimension." *Buckhannon Bd. and Care Home, Inc. v. West Va. Dept. of Health and Human Resources*, 532 U.S. 598, 609 (2001).

      A review of the docket reveals nothing out of the ordinary for a typical patent infringement case. Both sides litigated their positions vigorously, but not outside the bounds of reasonable advocacy. Wendt's fee motion focuses significantly on a discovery dispute that began in July 2018. IQASR made a Request for Production on Wendt, seeking a variety of Wendt's electronically-stored customer, engineering, and marketing records. Wendt determined that the initial tranche of documents responsive to IQASR's requested search terms involved some 1.6 million pages of records (with several more tranches of documents expected to follow). The parties had several discussions about IQASR's requests, including the breadth of IQASR's search terms, the degree to which IQASR's principal – Dean Anderson, the inventor on the patent at issue and an active competitor to Wendt in the automobile recycling space – should have access to Wendt's customer and other information, and the question over who would bear the cost (estimated to be in excess of $400,000) to screen the requested documents for confidentiality and proprietary information concerns. Eventually, the parties reached an agreement: Wendt would not object to the breadth of IQASR's requested search terms and would produce the 1.6 million records, but those records would be subject to a blanket "attorney eyes

3

only" designation, rather than being individually evaluated, thereby preventing their disclosure to Mr. Anderson. The Magistrate Judge resolved **(# 122)** this dispute on the basis of the parties' agreement.

The dispute flared up again in September 2018. IQASR reviewed a representative sample of the documents and determined that an "attorney eyes only" designation was not warranted for any of them. It sought to have Wendt substantially revise or reduce its confidentiality designations. Wendt moved for a protective order, seeking to adhere to the parties' prior agreement. The Magistrate Judge eventually ruled **(# 140)** that although IQASR would have been justified in imposing the burden on Wendt "to negotiate reasonable search terms and to then review the identified documents for relevance [and] confidentiality," once the parties "agreed to a different procedure so [IQASR] could get more and much broader discovery more quickly," it would now be "unjust to release [it] from its obligation under the agreement." The Magistrate Judge agreed that the parties' agreement included a provision allowing IQASR to challenge Wendt's confidentiality designations, but the Magistrate Judge held that it was IQASR's burden to identify the specific, relevant documents that warranted reconsideration of a confidentiality designation, not Wendt's burden to conduct a wholesale review of all confidentiality designations. On this basis, Wendt's request for a protective order was granted. The Magistrate Judge also held that because the parties' agreement was clear and unambiguous and IQASR's demands were inconsistent with that agreement (and contrary to "admonishment and suggestions" from the Magistrate Judge during discussions over the dispute), that Wendt should be awarded its attorney fees for the dispute. The parties were ultimately able to resolve the fee issue privately **(#159).**

Shortly thereafter, due to the Court's claim construction rulings, the parties agreed **(#160)** that a stipulated judgment of invalidity should enter in favor of Wendt, effectively bringing the case to an end.

This Court does not consider the discovery dispute, nor the proceedings surrounding it, to transport this case into "exceptional" territory. Conflicts over e-discovery requests on the scale at issue here are not at all unusual. Nor is it uncommon for parties to attempt to revisit prior e-discovery rulings as the case progresses and they conclude that initial agreements they entered into in order to resolve those disputes no longer serve their litigation interests. IQASR's change of strategy was thwarted by the Magistrate Judge, but the Magistrate Judge's resolution of the matter does not make any findings suggesting that IQASR's position was frivolous, dilatory, in bad faith, or otherwise substantively unreasonable.

The fact that the Magistrate Judge awarded fees against IQASR does not change the situation. The mere fact that sanctions were imposed at one point during the case does not render the entirety of the case exceptional at its terminus. *See e.g. Kahn v. Hemosphere*, *Inc.*, 825 Fed.Appx. 762, 772 (Fed. Cir. 2020). Indeed, by Wendt's own stipulation, it recovered its reasonable attorney fees relating to this particular discovery dispute. In the absence of evidence of ongoing unreasonable litigation tactics by IQASR, the Court is not inclined to bootstrap a finding that the entire litigation was "exceptional" based on the fact that IQASR acted without substantial justification in one limited phase of the case.

The only other basis urged by Wendt that is particularly within this Court's knowledge is Wendt's contention that IQASR's proffered claim construction on the key term "magnetic fuzz" was "exceptionally weak." To be sure, this Court found the patent's definition of that term to be indefinite, and the Federal Circuit agreed. As Wendt points out, the Federal Circuit's opinion

5

affirming this Court's claim construction ruling reads as somewhat critical of the patent's recursive and incomplete definitions of the term, referring to it as a "morass of uncertainty and contradiction" and a "word salad." *IQASR, LLC v. Wendt Corp.*, 825 Fed.Appx. 900, 905 (Fed. Cir. 2020). But the focus of the "exceptional case" analysis is not whether the party's litigation position was correct, but whether it was reasonable. *Munchkin v. Luv n. Care, Ltd.,* 960 F.3d 1373, 1379 (Fed. Cir. 2020). At no point did the Federal Circuit suggest that IQASR's positions in support of the patent's claims were unreasonable. To the contrary, the Federal Circuit carefully considered IQASR's various arguments in defense of the patent, including the suggestion that Mr. Anderson permissibly (if habitually) chose "modal verbs" like "may" and "could" to describe the characteristics of the invention or used non-limiting language that nevertheless "eradicat[es] any latent ambiguity," rather than summarily rejecting those arguments. 825 Fed.Appx. at 906.

This Court's own impression of IQASR's arguments is similar: its arguments were unpersuasive, but they were not unreasonable. Mr. Anderson's patent is indeed somewhat of a "word salad," but its general thrust is readily-discernable and, while not persuasive in its arguments as to the definiteness of Mr. Anderson's chosen language, IQASR presented at least colorable arguments that the patent's terms were definite. *See generally Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 809 (2014) (definiteness requirement "must take into account the inherent limitations of language," and allow for "some modicum of uncertainty"). Like the Federal Circuit, this Court saw enough arguable logic in IQASR's arguments to wade into the details of the patent itself and attempt to assess its meaning, rather than rejecting IQASR's arguments out of hand as frivolous or patently-illogical.

More significantly, the Court notes that the patent in question has also been considered by several outside sources, none of whom lodged any apparent concerns about its indefiniteness.[1] First, the patent was approved by a patent examiner who apparently found it sufficiently definite to cloak it with the presumption of validity under 35 U.S.C. § 282.  Certainly, the Patent Office gives patents under review a broader reading than a court might.  *In re Packard*, 751 F.3d 1307, 1312 (Fed. Cir. 2014).  But the fact that a patent examiner reviewed the patent for indefiniteness and found a basis to believe that it was sufficiently definite does undercut, to some limited degree, Wendt's argument that the patent's language was so patently indefinite as to render IQASR's defense of it to be objectively unreasonable. *See e.g. WPEM, LLC v. SOTI, Inc.*, 837 Fed.Appx. 773, 774 (Fed. Cir. 2020) (implying that courts adjudicating fee motions should "account for the presumptions of validity and enforceability" attaching to issued patents).

Second, Wendt makes much of an "infringement abatement insurance policy" that IQASR obtained.  Wendt argues that the policy created an incentive for IQASR to litigate this case without regard to cost, as the insurer would instead bear most of the litigation costs.  But as IQASR points out, because the policy shifted some of the costs of litigation onto the insurer, the insurer required that its own independent attorney assess IQASR's likelihood of success before

---

[1]   Wendt also filed a request for *inter partes* review before the Patent Trial and Appeal Board ("PTAB"), arguing at length that the PTAB should declare the patent's use of the term "magnetic fuzz" (among others) to be indefinite.  Wendt represented to this Court **(# 73)** the high likelihood that the PTAB would find the patent's language indefinite or, at least, adopt one of Wendt's alternative arguments.  (The Court need not consider whether the very fact that Wendt felt the need to assert alternative arguments undercuts Wendt's position here that it was unreasonable to think that any body considering the patent would readily find it invalid due to indefiniteness.)  Ultimately, the PTAB rejected Wendt's argument that it was even empowered to make the finding of indefiniteness that Wendt requested and it specifically stated that "we express no opinion as to the definiteness of the term "magnetic fuzz" and our decision should not be interpreted as a finding regarding definiteness.  Thus, this Court does not rely on the PTAB's decision as evidence of the reasonableness or lack thereof for IQASR's constructions of the patent's terms.

7

authorizing IQASR to file suit. That attorney, motivated by an intention to protect the insurer against losses incident to futile litigation, apparently agreed that IQASR's claims had enough colorable merit to underwrite this suit.[2] The opinion of a third-party attorney – one with an incentive to ensure that IQASR's claims are not only colorable but potentially meritorious – that IQASR had an arguable basis to assert infringement here is a factor to which the Court gives some weight.

The Court finds that Wendt's remaining arguments do not fundamentally alter the Court's conclusion that this was not an "exceptional" case under 35 U.S.C. § 285 such that fees should be awarded. This is not a suit in which IQASR has engaged in a pattern of litigation for the purpose of extracting low-value settlements. *See Electronic Communication Technologies, LLC v. ShoppersChoice.com, LLC*, 963 F.3d 1371, 1377 (Fed. Cir. 2020). IQASR is actively involved in practicing the technology contained in the patent and a direct competitor to Wendt. As befits a case between competitive rivals, the litigation here was accompanied by a degree of intensity that, if preferably avoided, is at least unsurprising. Both sides engaged in litigation tactics and conduct that, in the cold light of post-judgment analysis, could and should have been avoided. But sadly, that conduct is the norm, rather than the exception, in most civil litigation.

---

[2] Wendt argues in reply that because IQASR never produced any opinion letter from the insurer, the Court should deem IQASR's arguments to be "in bad faith." For one thing, it was Wendt that argued the relevance of the insurance policy, tendering the policy itself as an exhibit in support of its fee motion. IQASR simply pointed to the pre-authorization provision in that policy. Second, the Court need not review the particulars of any opinion letter to draw the unremarkable inferences that: (i) the insurer's attorney would act diligently in the insurer's financial interest; (ii) that the insurer's financial interests would be served only if there was a basis to believe that IQASR's litigation positions had a reasonable chance of success; and (iii) the fact that IQASR was authorized by the insurer to proceed implies that the insurer's attorney agreed that IQASR's claims had a reasonable chance of success.

For these reasons, the Court finds that Wendt has not shown that this case was "exceptional" under 35 U.S.C. § 285, and consequently Wendt's Motion for Attorney Fees **(#180, 184, 186)** is **DENIED.**

Both sides have moved **(# 185, 202, 208)** to restrict public access to certain exhibits to the briefing herein.  The Court finds that the matters sought to be restricted implicate privacy interests relating to each side's business operations and that the public interest under D.C. Colo. L Civ. R. 7.2(c) and such information has been adequately protected by the parties filing redacted versions of the subject exhibits.  Thus, the Court **GRANTS** the Motions to Restrict Access **(# 185, 202, 208)**, allowing the provisional restrictions previously imposed to remain in place.

Dated this 30th day of August, 2021.

                **BY THE COURT:**

                _____

                Marcia S. Krieger
                Senior United States District Judge

9